UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| BISHOP OF CHARLESTON, a Corporation Sole, d/b/a The Roman Catholic Diocese of Charleston, and SOUTH CAROLINA INDEPENDENT COLLEGES AND UNIVERSITIES, INC., <br><br> Plaintiffs, <br> vs. <br><br> MARCIA ADAMS, in her official capacity as the Executive Director of the South Carolina Department of Administration; BRIAN GAINES, in his official capacity as budget director for the South Carolina Department of Administration; and HENRY MCMASTER, in his official capacity as Governor of the State of South Carolina, <br><br> Defendants. | Civil Action No. 2:21-cv-1093 <br><br> **Opinion and Order** |

This matter is before the Court on Proposed Intervenor-Defendants Orangeburg County School District ("OCSD") and the South Carolina State Conference of the NAACP ("SCNAACP") (collectively, "Proposed Intervenors") motion to intervene as Defendants in this action. (ECF No. 41.) For the reasons set forth in this Order the motion to intervene is denied.

**BACKGROUND**

On April 14, 2021, Plaintiffs Bishop of Charleston, a Corporation Sole, doing business as The Roman Catholic Diocese of Charleston ("Bishop"), and South Carolina Independent Colleges and Universities, Inc. ("SCICU") (collectively, "Plaintiffs") filed a complaint for declaratory and injunctive relief asking the Court to strike down Article XI,

1

Section 4 of the South Carolina Constitution as violative of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and the Free Exercise Clause of the First Amendment to the U.S. Constitution. (*See* Compl., ECF No. 1.) The text of Section 4 (hereinafter, "no-aid provision") reads: "No money shall be paid from public funds nor shall the credit of the State or any of its political subdivisions be used for the direct benefit of any religious or other private educational institution." S.C. Const. art. IV, § 4. Plaintiffs argue that the no-aid provision unconstitutionally discriminates against them on the basis of race and religion. They contend the State is barring "private schools and universities from participation in neutral grant programs" by way of a state constitutional provision that "is based on longstanding and pervasive religious and racial bigotry." (Compl. ¶ 5.) Plaintiffs principally take issue with already allocated Governor's Emergency Education Relief ("GEER") funds provided through the federal CARES Act and certain funds authorized or appropriated by the South Carolina General Assembly through Act No. 154 of 2020 to the South Carolina Department of Administration for state and local governments and independent college and university expenditures ("Act 154"), 2020 S.C. Act No. 154, § 3(G) (Sept. 25, 2020).

On April 16, 2021, Plaintiffs filed a motion for a preliminary injunction and motion to set a briefing and argument schedule. (ECF No. 6.) Henry McMaster, in his official capacity as the Governor of the State of South Carolina ("Governor"), Marcia Adams, in her official capacity as Executive Director of the South Carolina Department of Administration ("Director Adams"), and Brian Gaines, in his official capacity as Budget Director for the South Carolina Department of Administration ("Director Gaines") (collectively, "Defendants") filed responses in opposition to Plaintiffs' motion on April 21,

2

2022. (ECF Nos. 19 & 22.) On April 27, 2021, Plaintiffs filed a First Amended Complaint, which, *inter alia*, included new allegations regarding additional federal funds and a prayer for nominal and compensatory damages. (Am. Compl. ECF No. 26 at 11, 15.)

Following a hearing on May 3, 2021, the Court denied Plaintiffs' motion for a preliminary injunction, finding Plaintiffs failed to make a clear showing that they are likely to succeed on the merits. (ECF No. 34.) Defendants subsequently answered the Amended Complaint; all denied liability. (*See* ECF Nos. 31 & 36.) On June 16, 2021, Proposed Intervenors moved to intervene in this case. (ECF No 41.) Plaintiffs and the Governor filed responses in opposition to the motion to intervene (ECF Nos. 48 & 51), and Proposed Intervenors filed a reply (ECF No. 55). This matter is ripe for disposition and the Court now makes the following ruling.

## **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide two avenues for intervention relevant to this case:

> Under Rule 24(a)(2), a district court must permit intervention as a matter of right if the movant can demonstrate "(1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation." *Teague v. Bakker*, 931 F.2d 259, 260–61 (4th Cir. 1991).

*Stuart v. Huff*, 706 F.3d 345, 349 (4th Cir. 2013). "Importantly, all these requirements must be met before intervention is mandatory; a failure to meet any one will preclude intervention as of right." *N. Carolina State Conf. of NAACP v. Berger*, 999 F.3d 915, 927 (4th Cir. 2021) (citing *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976)). "If intervention of right is not warranted, a court may still allow an applicant to intervene permissively under Rule 24(b), although in that case the court must consider

3

'whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.'" *Stuart*, 706 F.3d at 349 (quoting Fed. R. Civ. P. 24(b)(3)).

## DISCUSSION

### A. Intervention as a Matter of Right

"To intervene as a matter of right under Fed. R. Civ. P. 24(a)(2), the moving party must show that (1) it has an interest in the subject matter of the action, (2) disposition of the action may practically impair or impede the movant's ability to protect that interest, and (3) that interest is not adequately represented by the existing parties." *Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n*, 646 F.2d 117, 120 (4th Cir. 1981). As to the first element, the Fourth Circuit looks for a "significantly protectable interest." *Teague*, 931 F.2d at 261. An applicant for intervention has a "significantly protectable interest" in the subject matter of the litigation when a party "stand[s] to gain or lose by the direct legal operation of the district court's judgment." *Id.* The interest in the subject matter of the litigation must be "direct and substantial," *In re Richman*, 104 F.3d 654, 659 (4th Cir. 1997), as opposed to an interest that is "too collateral, indirect, and insubstantial to support intervention as of right," *Purcell v. BankAtlantic Financial Corp.*, 85 F.3d 1508, 1513 (11th Cir. 1996).

Proposed Intervenors argue that they have a protectable interest in the outcome of this litigation because, if the no-aid provision is invalidated, fewer funds would be available for the benefit of OCSD's students, the SCNAACP's youth members, and the children of the SCNAACP's adult members, than if the no-aid provision were to remain in force. (ECF No. 41 at 6.) Proposed Intervenors cite *Kleissler v. U.S. Forest Service*, 157 F.3d 964 (3d Cir. 1998), for the proposition that school districts have an interest justifying

4

intervention even when the loss of school funding would result from activities unrelated to education. (ECF No. 41 at 7–8.)

The Court finds that Proposed Intervenors do not have a significantly protectable interest in this litigation because their interest is not direct and substantial. First, Proposed Intervenors do not stand to gain or lose anything by the direct legal operation of this Court's judgment. *Teague*, 931 F.2d at 261. OCSD does not have *any* interest in the Act 154 funds, which are authorized or appropriated for higher-educational institutions. And though the SCNAACP briefly mentions its college chapters in the affidavit from its president (Murphy Aff. ¶ 5, ECF No. 41-1), the affidavit focuses on the SCNAACP's interest in K-12 public school education (*Id.* ¶¶ 5–15). Thus, if the no-aid provision were invalidated through this litigation, Proposed Intervenors would have no more and no less access to Act 154 funds. With respect to the GEER funds, OCSD and the public schools in which the SCNAACP's members are enrolled all currently qualify for those funds. *See* Coronavirus Response and Relief Supplemental Appropriations Act, 2021 (CRRSA Act), Pub. L. No. 116-260, Div. M, Title III, § 312, Dec. 27, 2020, 134 Stat. 1924 (2020). In short, whether the Plaintiffs win or lose this case will have no direct impact on Proposed Intervenors access to GEER funds. State governors' allocation of the GEER funds is discretionary, and although the amount of GEER funds available to the Governor is finite, Proposed Intervenors will not automatically receive more or less if the no-aid provision is upheld or invalidated. Speculation about potential future allocation choices by the Governor is not a sufficient interest for intervention. *See Ohio Valley Envtl. Coal., Inc. v. McCarthy*, 313 F.R.D. 10, 22–24 (S.D. W. Va. 2015) (discussing the Fourth Circuit's standard for contingent economic interests in intervention and finding a lack of a

significantly protectable interest where "a ruling either way carries no certainty of harm or benefit" to a proposed intervenor).

Proposed Intervenors' reliance on *Kleissler* is unavailing. In *Kleissler*, the Third Circuit held that school districts and municipalities had direct interests in an action involving a logging contract because "state law commands the Commonwealth, through its political subdivisions, to forward to them federal grant money generated through timber harvesting each year, money that they will lose, at least temporarily and perhaps permanently, if plaintiffs are successful in this lawsuit." 157 F.3d at 973. The plaintiffs alleged that logging projects in Pennsylvania violated the National Environmental Protection Act ("NEPA") and the National Forest Management Act. *Id.* at 968. School districts and municipalities filed motions to intervene to defend the logging projects. *Id.* By federal statute, twenty-five percent of the gross amounts received from logging operations were disbursed to the Commonwealth, which in turn forwarded those sums to the counties where the forest was situated, which ultimately passed the money on to local municipalities and school districts for the benefit of public schools and roads. *Id.* The localities contended they would lose those funds if the logging projects were cancelled due to the lawsuit. *Id.* The Third Circuit stated:

> The relief sought by plaintiffs, *i.e.*, an injunction to bar logging (at least until such time as the NEPA process is completed) would have an immediate, adverse financial effect on the school districts and municipalities. That result is not speculative, intangible or unmeasurable, especially when, as other courts have observed, NEPA compliance actions can take years.
>
> . . . . To suspend the flow of revenue to the school districts and municipalities for even a limited period of time would affect spending for essential school activities and public projects. We are persuaded that the interests jeopardized, which are protected by state law, are direct, substantial and of adequate public interest as to justify intervention. In these sparsely populated areas with limited tax bases, the impairment caused by curtailing

6

revenue provided through logging activity would be significant.

*Id.* at 973 (internal citation omitted).

*Kleissler* is distinguishable on multiple grounds. Proposed Intervenors are not guaranteed any specific amount of money the way the school districts and municipalities were in *Kleissler*, and they do not stand to automatically lose funding if Plaintiffs' achieve the relief they are seeking. Proposed Intervenors do not have a legal right to the discretionary GEER funds and Act 154 funds the way that the school districts and municipalities did in *Kleissler*. Whereas the *Kleissler* intervenors relied on funding derived from the logging contracts for years, the federal funds at issue in the instant case are unique to the COVID-19 pandemic and are designed to address near-term funding gaps. Moreover, Plaintiffs' motion for a preliminary injunction has already been denied and the instant constitutional challenge to the no-aid provision bears no resemblance to a NEPA compliance action, which "can take years." *See id.* Barring unforeseen delay, this litigation should be resolved far more quickly than a case like *Kleissler*.

The Court's finding that Proposed Intervenors lack the required interest in the subject matter of this action obviates the need to address the remaining two requirements for intervention of right. Accordingly, the Court holds that Proposed Intervenors do not have a right to intervene in this action under Rule 24(a)(2), and the motion to intervene on that basis is denied.

### B. Permissive Intervention

Federal Rule of Civil Procedure 24(b) allows the Court to permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "In exercising its discretion, the court

7

must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Although the decision to allow permissive intervention is discretionary, "some standards have been developed to guide the courts in making intervention determinations." *Hill v. W. Elec. Co.*, 672 F.2d 381, 386 (4th Cir. 1982).

In the Fourth Circuit, the following four criteria have been established as required for permissive intervention, either by the text of Rule 24(b) itself or by case law interpreting the rule: (1) the motion is timely; (2) the potential intervenor's claim or defense and the main action have a question of law or fact in common; (3) there exists an independent ground of subject matter jurisdiction; and, (4) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. *Shanghai Meihao Elec., Inc. v. Leviton Mfg. Co.*, 223 F.R.D. 386, 387 (D. Md. 2004).

Granting that Proposed Intervenors' motion is timely, and that their defense(s) shares questions of law and fact in common with the main action, Proposed Intervenors lack standing in this matter as it is currently pled by Plaintiffs and there is no independent ground of subject matter jurisdiction. As explained above, the interest that Proposed Intervenors seek to vindicate—preserved access to public school funding—will not be directly affected by the resolution of this case. Moreover, the Court finds that intervention would unnecessarily complicate the case, hinder judicial economy, and detract from the timely resolution of the weighty issues implicated by this matter. Allowing intervention would invoke unnecessary expenditure of judicial resources to address Proposed Intervenors contention that the Governor is either inadequately defending the case or is colluding with Plaintiffs (ECF No. 41 at 9–11). *See N. Carolina State Conf. of NAACP v.*

*Cooper*, 332 F.R.D. 161, 172 (M.D.N.C. 2019) (denying intervention where the district court possessed "significant concern that the inclusion of [p]roposed [i]ntervenors would likely detract from, rather than enhance, the timely resolution, clarity, and focus on, solely the weighty and substantive issues to be addressed"). Furthermore, Plaintiffs would likely suffer prejudice in "having to address dueling defendants," purporting to all represent the interest of vindicating the no-aid provision, but by way of multiple, sometimes contradictory, litigation strategies. *Id.* Accordingly, the Court declines to exercise its discretion to permit permissive intervention and the motion to intervene on that basis is denied.

### C. Amicus Curiae

The Court does not wish to discount Proposed Intervenors' perspective the importance of the no-aid provision and the prospective outcomes of this litigation. However, that perspective can be accounted for without granting intervention. As the Fourth Circuit recognized in *Stuart v. Huff*, "Our decision [affirming the district court's denial of intervention of right and permissive intervention] does not leave appellants without recourse. Appellants retain the ability to present their views in support of the Act by seeking leave to file amicus briefs both in the district court and in this court." 706 F.3d at 355 (citation omitted). "While a would-be intervenor may prefer party status to that of friend-of-court, the fact remains that amici often make useful contributions to litigation." *Id.* Here the Court concludes that Proposed Intervenors' participation as amici would satisfy their asserted need for intervention. Accordingly, should Proposed Intervenors wish to participate in that role, the Court will welcome their application to submit an amicus brief at an appropriate time.

## CONCLUSION

For the reasons set forth above, Proposed Intervenors' motion to intervene (ECF No. 41) is DENIED.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

July 26, 2021
Charleston, South Carolina