IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| BISHOP OF CHARLESTON, a Corporation Sole, d/b/a The Roman Catholic Diocese of Charleston, and SOUTH CAROLINA INDEPENDENT COLLEGES AND UNIVERSITIES, INC.,<br><br>                *Plaintiffs*,<br><br>       v.<br><br>MARCIA ADAMS, in her official capacity as the Executive Director of the South Carolina Department of Administration; BRIAN GAINES, in his official capacity as budget director for the South Carolina Department of Administration; and HENRY MCMASTER, in his official capacity as Governor of the State of South Carolina,<br><br>                *Defendants*.<br>  and<br><br>THE STATE OF SOUTH CAROLINA,<br><br>                *Intervenor–Defendant*. | Civil Action No.: 2:21-cv-1093-BHH<br><br><br><br>**DEFENDANTS' JOINT *DAUBERT* MOTION IN LIMINE TO EXCLUDE PLAINTIFFS' PURPORTED EXPERT DR. CHARLES GLENN** |

Defendants Marcia Adams, in her official capacity as the Executive Director of the South Carolina Department of Administration ("Director Adams"); Brian Gaines, in his official capacity as budget director for the South Carolina Department of Administration ("Gaines"); Henry McMaster, in his official capacity as Governor of the State of South Carolina ("Governor McMaster"); together with Intervenor–Defendant State of South Carolina ("the State") (collectively, "Defendants"), move in limine to exclude the report, opinions, and testimony of Plaintiffs' purported expert, Dr. Charles Glenn, because they fail to satisfy the requirements of

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). For the reasons that follow, the Court should grant Defendants' *Daubert* Motion.[1]

### BACKGROUND

On April 14, 2021, Plaintiffs Bishop of Charleston, a Corporation Sole, d/b/a The Roman Catholic Diocese of Charleston ("Bishop"), and South Carolina Independent Colleges and Universities, Inc. ("SCICU") (collectively, "Plaintiffs") filed a Complaint—and later an Amended Complaint—asking the Court to strike down article XI, section 4 of the South Carolina Constitution as violating the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and the Free Exercise Clause of the First Amendment to the U.S. Constitution. *See* ECF Nos. 1 & 26. Plaintiffs argue article XI, section 4, to which they refer as the "Blaine Amendment," unconstitutionally discriminates against them on the basis of race and religion.

After the Court denied Plaintiffs' Motion for Preliminary Injunction, *see* ECF No. 34, the parties pushed forward with discovery. On July 29, 2021, Plaintiffs disclosed two purported experts they intended to offer in support of their case without indicating the witnesses' areas of expertise. *See* ECF No. 65. Plaintiffs also sent copies of the witnesses' curriculum vitae and reports to Defendants around the same time. Upon reviewing the reports and concluding no defense experts were necessary, Defendants noticed the depositions of Dr. Charles Glenn and Dr. Blease Graham. Those depositions took place on August 31, 2021, and September 1, 2021, respectively. Discovery is now closed. *See* ECF No. 53, ¶ 7.

This matter comes before the Court on Defendants' Joint Motion in Limine to exclude to Dr. Glenn under *Daubert*.

---

[1] The undersigned certify this Motion contains a full explanation, and a supporting memorandum would serve no useful purpose. *See* Local Civil Rule 7.04 (D.S.C.). Further, after consultation, Plaintiffs declined to withdraw Dr. Glenn as an expert. *See* Local Civil Rule 7.02 (D.S.C.).

STANDARD

The admissibility of expert testimony is governed by 702 of the Federal Rules of Evidence, as interpreted by the U.S. Supreme Court in *Daubert* and its progeny. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

"Implicit in the text of Rule 702, the *Daubert* Court concluded, is a district court's gatekeeping responsibility to 'ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert*, 509 U.S. at 597). According to the Court, "[t]his entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts at issue." *Daubert*, 509 U.S. at 592–93. The proponent of expert testimony must demonstrate that the testimony satisfies these requirements. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001); *see also* Fed. R. Evid. 104(a) (placing burden on proponent of expert testimony).

Rule 702 affords a court wide latitude to admit expert testimony, to be sure, but such testimony must be (1) based on the special knowledge of the expert and (2) helpful to the trier of fact. *See Daubert*, 508 U.S. at 589–91. A court's gatekeeping function under *Daubert* is equally applicable to scientific and nonscientific expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–49 (1999). Although the gatekeeping function is the same, "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the

issue, the expert's particular expertise, and the subject of his testimony." *Id.* at 150. Regardless, "[t]he reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia*." *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999). "The Supreme Court has advised district courts to require more than the mere '*ipse dixit*' of the expert witness." *Nucor Corp. v. Bell*, No. 2:06-cv-02972-DCN, 2008 WL 4442571, at *4 (D.S.C. Jan. 11, 2008). And "when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002).

### ARGUMENT

Viewed in this prism, the Court should exclude Dr. Glenn's report, testimony, and opinions under *Daubert* because (1) he admittedly is not qualified to opine on South Carolina history; (2) his opinions are unreliable and irrelevant to the issues at hand; and (3) the questions of law on which he sought to offer his "judgment," instead of an opinion, are in the sole province of this Court.

**I.      Dr. Glenn is not qualified.**

The Court should first exclude Dr. Glenn's report, opinions, and testimony because he admittedly lacks the requisite qualifications.

When a purported expert "clearly has no relevant qualifications," a court may exclude the witness. *Templeton v. Bishop of Charleston*, No. 2:18-CV-02003-DCN, 2021 WL 3419442, at *3 (D.S.C. Aug. 5, 2021). "Even where a witness has special knowledge or experience, qualification to testify as an expert also requires that the area of the witness's competence matches the subject matter of the witness's testimony." 29 Charles A. Wright. et al., *Federal Practice & Procedure* § 6265 at 255 & nn.34–35 (1977). Opinions falling outside the expert's area of expertise are

4

inadmissible. *See, e.g.*, *Watkins v. Schriver*, 52 F.3d 769, 771 (8th Cir. 1995). Similarly, experts lacking expertise in an area implicated by their testimony cannot base their opinions on the work performed for them by other individuals in that discipline if the soundness of that underlying work is at issue. *See Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 614–15 (7th Cir. 2002).

During his deposition, Dr. Glenn testified he has "been an expert around the world really in dealing with questions of educational policy" and "written a lot of history drawing upon the work of academic historians." Ex. A, Glenn Dep. Tr. at 24:16–20. According to Dr. Glenn, he is "regarded as a policy expert" and does not "claim to be the kind of historian who does the nitty-gritty field work of going through the records and so forth." *Id.* at 25:3–4, 9–11. Dr. Glenn said he is being offered as an "historian for purposes of this kind of litigation." *Id.* at 27:8–9. Yet Dr. Glenn candidly admitted that he is "not any kind of an expert on South Carolina" history. *Id.* at 58:8–9; *see also id.* at 17:9–12. In fact, he has never even been to South Carolina. *Id.* at 15:16–18. Nor has he taken any courses on South Carolina history. *Id.* at 15:19–22. Dr. Glenn did say he has "read a number of books about South Carolina history."[2] *Id.* at 15:23–25.

But Dr. Glenn has no idea how many times the South Carolina Constitution of 1895 has been amended. *Id.* at 58:2–5. Likewise, he has "no knowledge as to the activities of the West Committee who amended the provision of the South Carolina Constitution that is an issue in this case." *Id.* at 61:24–62:3. And he has "neither knowledge nor opinion about the[] motivations" of the West Committee, the South Carolina General Assembly, "or any other body that would have had a role to play in the amendment of the provision in 1972." *Id.* at 62:4–10, 65:7–16. When

---

[2] If that is the standard, then a handful of Defendants' lawyers could arguably qualify as experts in South Carolina history simply by reading Dr. Walter Edgar's book. *See generally* Walter Edgar, *South Carolina: A History* (1999). Plaintiffs cannot set the bar so low to give an unqualified witness the imprimatur of an expert.

5

asked whether, "even within South Carolina, different attitudes and opinions and policies were prevalent" regarding education, Dr. Glenn candidly admitted, "I assume so, but I'm not a historian of South Carolina, so . . . you'll have to ask that question elsewhere." *Id.* at 44:11–17.

To be sure, Dr. Glenn is an accomplished academic. His 41-page CV proves as much. But his competence must match the subject matter of his testimony. *See* 29 Wright. et al., *supra*, at 255 & nn.34–35. Here, it does not. And the Court need not take Defendants' word for it. Dr. Glenn, to his credit, admitted that he is not an expert in South Carolina history. Indeed, Dr. Glenn clarified "right away" that he "claim[s] no particular knowledge of South Carolina history beyond what is in [his] report." *Id.* at p. 17, ll. 9–12. And Dr. Glenn only mentioned South Carolina in 14 out of the 83 paragraphs in his expert report. Even as to those isolated mentions of the State, Dr. Glenn already admitted he does not conduct his own "field work." *Id.* at 25:10. His failure to conduct research into the events about which he seeks to opine—coupled with the admissions in his deposition—render him unqualified to opine on South Carolina history. *Cf. Dura Auto. Sys. of Ind., Inc.*, 285 F.3d at 614–15.

Because Dr. Glenn admittedly is not qualified as an expert in South Carolina history, he lacks the requisite qualifications to offer his conclusory—and largely irrelevant—opinions about what happened around the country before 1956. The Court should therefore enter an Order excluding his report, testimony, and opinions under *Daubert*.

**II.     Dr. Glenn's opinions are unreliable and irrelevant.**

Even if the Court were able to move past the lack of qualifications, Dr. Glenn's report, testimony, and opinions are unreliable and irrelevant to the issues before the Court.

It is axiomatic that "the district court must ensure that the proffered expert opinion is 'based on scientific, technical, or other specialized knowledge and not on belief or speculation, and

6

inferences must be derived using scientific or other valid methods.'" *Nease*, 848 F.3d at 229 (quoting *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)). A district "court is to exclude 'subjective belief or unsupported speculation.'" *In re Bausch and Lomb Inc. Contact Lens Sol. Prods. Liab. Litig.*, No. 2:06-MN-77777-DCN, 2009 WL 2750462, at *9 (D.S.C. Aug. 26, 2009) (citing *Daubert*, 509 U.S. at 590).

Courts often consider "whether the expert's analysis leaves unexplained analytical gaps and whether the expert has reasonably accounted for alternative explanations." *Wickersham v. Ford Motor Co.*, No. 9:13-cv-1192-DCN; 9:14-cv-0459-DCN, 2016 WL 5349093, at *2 (D.S.C. Sept. 26, 2016) (citing *Gen. Elec. Co. v. Joinder*, 522 U.S. 136, 146 (1996)). Also worthy of consideration is "[w]hether the expert is proposing to testify about matters growing naturally out of research he has conducted independent of the litigation, or whether he has developed his opinion expressly for the purposes of testifying." Fed. R. Evid. 702, advisory committee note; *see also Bowers v. Norfolk S. Corp.*, 537 F. Supp. 2d 1343, 1354–64. (M.D. Ga. 2007) (finding the plaintiffs' experts' opinions lacked independent bases because they did not form their "opinions independent of the litigation; instead, [they] formed those opinions in the context of litigation").

"In considering these factors, the focus 'must be solely on principles and methodology, not on the conclusions that they generate.'" *Wickersham*, 2016 WL 5349093, at *2 (citing *Daubert*, 509 U.S. at 591). "Although an inquiry under *Daubert* is flexible, other federal courts have held that experts fail to pass *Daubert* scrutiny when the expert has failed to measure, test, or validate their opinions." *Walker v. DDR Corp.*, No. 3:17-cv-01586-JMC, 2019 WL 3409724, at *9 (D.S.C. Jan. 4, 2019). After all, "[u]ntested potentialities do not satisfy the *Daubert* standard." *Bausch*, 2009 WL 2750462, at *11. Further, "[a] failure to consider potential alternative causes may render

an expert's testimony inadmissible." *In re: Pella Corp. Architect & Designer Series Windows Mktg., Sales Practices & Prods. Liab. Litig.*, 214 F. Supp. 3d 478, 483 (D.S.C. 2016).

Plaintiffs admitted in their Motion for Summary Judgment that "this Court's focus in analyzing the history of the 1972 amendment should stay on the West Committee." ECF No. 73-1, at 30. Yet Dr. Glenn has no knowledge or opinions about the West Committee. Indeed, the opinions in his report come to a halt in 1956. Though a lot happened over the next two decades, he takes none of that into account.

It is well-settled that an "expert's theory and method must have a relevant relationship with the facts at issue in the case." *Bausch*, 2009 WL 2750462, at *10 (citing *Daubert*, 509 U.S. at 591–93). Dr. Glenn's theory does not have any such connection because his report focuses primarily on education, racial bias, and religious bigotry during Reconstruction in the South, in general, up through the first half of the 20th century. That is not the pertinent timeframe. At issue before the Court is whether the West Committee—and later the people of South Carolina together with the General Assembly—were motivated by racial animus or religious bigotry when they voted to ratify what is now article XI, section 4 of the South Carolina Constitution in 1972. Driving this point home, Dr. Graham—Plaintiffs' other expert—thought the 1972 amendments were so extensive "that after the West Committee, the revised Constitution may be a new Constitution." Ex. A, Graham Dep. Tr. at p. 59:10–12. Dr. Glenn has offered nothing to help the Court wrestle with this inquiry. Indeed, he missed the mark by 16 years.

What is more, the vast majority of Dr. Glenn's report focuses on events, ideas, opinions, policies, and people from other States. *Cf. Nucor Corp.*, 2008 WL 4442571, at *7 ("Courts have considered an expert's reliance on anecdotal evidence as part of the Daubert reliability inquiry, often pointing to the use of anecdotal evidence as a marker of unreliability."). Though perhaps

8

interesting to read, none of that is relevant to the question at hand. When asked if he was "trying to attribute what leaders from other states thought to South Carolina . . . as evidence of what was going on in South Carolina at the time," Dr. Glenn said, "No." Ex. A, Glenn Dep. Tr. at 46:14–18. Dr. Glenn clarified he was "not making any statements about how South Carolina leaders felt about Catholics." *Id.* at 46:21–23. And he conceded different regions, even within the South and even within South Carolina, reacted differently to education. *Id.* at 43:3–44:14. With those admissions, the purpose for which Dr. Glenn is being offered as an expert in this case is unclear.

Although Dr. Glenn may be knowledgeable about education policy, the benefits of school choice, education in general, or the history of religious bigotry in other States, that does not assist the Court with the only relevant inquiry in this case: whether article XI, section 4 of the South Carolina Constitution was a product of racist and anti-Catholic motives. What happened in other States—or even selected anecdotes from South Carolina—is not relevant, particularly when these post-hoc observations from afar predate 1956. Yet that is all Dr. Glenn offered. The Court is already well-aware of the Tillman era. *See* ECF No. 34, at 10. As Plaintiffs concede, however, "this Court's focus in analyzing the history of the 1972 amendment should stay on the West Committee." ECF No. 73-1, at 30. Dr. Glenn knew nothing about the West Committee. Because Plaintiffs cannot show the relevance of Dr. Glenn's opinions to the issues in this lawsuit, *see* Ex. A, Glenn Dep. Tr. at 61:19–65:16, the Court should exclude his report, opinions, and testimony.

Questions of relevancy aside, Dr. Glenn's opinions suffer from another fatal flaw: they are not reliable as it relates to South Carolina. During his deposition, Dr. Glenn conceded he could not attribute what happened in other States and regions to South Carolina. Suffice it to say, his report paints a different picture. In any event, as to the 14 (out of 83) paragraphs in his report that mention South Carolina, Dr. Glenn admitted he conducted no field work because he is not that

9

kind of historian. Apparently, Plaintiffs want the Court to accept this testimony as true because Dr. Glenn wrote a couple chapters on South Carolina in his books. That is not the standard. *Cf. Holesapple v. Barrett*, 5 F. App'x 177, 179 (4th Cir. 2001) (requiring expert opinion evidence to be supported "by something more than the 'it is so because I say it is so' of the expert"); *Fernandez v. Spar Tek Indus., Inc.*, No. 0:06-cv-3253-CMC, 2008 WL 2185395, at *6 (D.S.C. May 23, 2008) ("an opinion based on an inadequate or inaccurate factual foundation cannot be a reliable opinion, no matter how valid the principles and methods applied or how well-qualified the expert").

"'Expert reports must not be sketchy, vague, or preliminary in nature' and 'must include how and why the expert reached a particular result, not merely the expert's conclusory opinions.'" *Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 210 (4th Cir. 2017) (quoting *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir. 1998)). Paragraph 7 of Dr. Glenn's report says it all. He wrote the report largely based upon prior books and any alleged sources backing up Dr. Glenn's opinions "will not be provided." Though he finally got around to providing a 26-page list of those sources the day before his deposition, that was too late.[3] These belated sources cannot and should not be considered.

---

[3] Dr. Glenn—through Plaintiffs' counsel—produced a 26-page list of sources upon which he apparently relied to formulate the opinions in his report the day before his deposition. This was improper. *See* Fed. R. Civ. P. 26(e) & 37(c)(1). Dr. Glenn previously advised the sources would "not be provided" in his report. ECF No. 73-2, ¶ 7. When asked why during his deposition, Dr. Glenn said he did not want the report to read like an "academic" piece. Ex. A, Glenn Dep. Tr. at 30:18–22. But Dr. Graham, Plaintiffs' other expert, had no problem showing his work and including an appendix of sources with his report. Of course, the time for Dr. Glenn to provide this information was with his original expert report, not 24 hours before his deposition in response to a subpoena he otherwise ignored. *See* Ex. B, Subpoena & Not. of Dep. of Dr. Glenn. Where, as here, Defendants still have no idea why Dr. Glenn is being offered as an expert—due to both the conclusory expert designation filed with the Court, *see* ECF No. 65, and his largely irrelevant deposition testimony—Plaintiffs cannot benefit from hiding the ball. *Cf.* Fed. R. Civ. P. 26(a)(2); *S. States Rack & Fixture, Inc. v. Sherwin–Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). Under these circumstances, exclusion is appropriate. *See, e.g., Palmetto Pharms, LLC v. AstraZeneca Pharms. LP*, No. 2:11-cv-00807-SB-JDA, 2012 WL 4369259, *2–3 (D.S.C. July 28, 2012).

On another note, Dr. Glenn's effort to at least implicitly depict South Carolina as a bastion of anti-Catholicism conflicts with Plaintiffs' other expert's opinions on the subject. According to Dr. Graham, "South Carolina did not experience a large influx of Catholics," and they "were small enough in number and political influence for statewide political leaders to ignore, tolerate, or berate." ECF No. 73-3, at 30. Yet Dr. Glenn's report and testimony intimate that the provision in question—at least in its prior form in the 1895 Constitution—was borne of religious bigotry. Which one is it? For purposes of this Motion, the Court need not answer that question because Dr. Glenn removed himself from the debate by admitting he is "not making any statements about how South Carolina leaders felt about Catholics." Ex. A, Glenn Dep. Tr. at 46:21–23. Neither Dr. Glenn nor Plaintiffs can have it both ways.

In the next breath, however, Dr. Glenn tries to claim his expert report focused primarily on "the motivations behind the amendment of the South Carolina Constitution which in 1895 which [he] regard[s] as being a significant indicator of the sorts of motivations that were part of the provision . . . not allowing funding of faith-based schools." *Id.* at 51:18–23. Further, while referring to our constitutional provision as a "Blaine Amendment" purportedly infested with anti-Catholic prejudice, Dr. Glenn later admits that African-Americans were educated in "mostly non-Catholic schools." *Id.* at 53:25–54:1. In sum, Dr. Glenn was all over the place. That Dr. Glenn's conflicting testimony was not tethered to any relevant facts in South Carolina only underscores Plaintiffs' failure to show the most basic indicia of reliability for his purported expert opinions.

*Daubert* requires more. Dr. Glenn may be an expert in education policy and an historian, but he is not an expert in South Carolina history. What happened in other states is not indicative of what happened in South Carolina. Nor can it be attributed to South Carolina. Further, as Plaintiffs concede, the Court must focus on the timeframe surrounding the work of the West

11

Committee. *Cf. City of Mobile v. Bolden*, 446 U.S. 55, 74 (1980) ("Past discrimination cannot, in the manner of original sin, condemn governmental action that is not itself unlawful."). Because Dr. Glenn's opinions are neither relevant nor reliable, the Court should enter an Order excluding them from the record for failure to satisfy Rule 702 and *Daubert*.

### III.    Dr. Glenn cannot offer legal opinions.

Last, to the extent Plaintiffs are permitted to rely upon Dr. Glenn in this case, the Court should exclude his testimony and opinions purporting to offer legal conclusions.

Questions of law lie exclusively within the province of the Court. Although Dr. Glenn cleverly sought to distinguish his "judgment" from an "opinion," *see* Ex. A, Glenn. Dep. Tr. at 69:12–70:2, that is a distinction without a difference. So is his effort to sidestep opining on the constitutionality of article XI, section 4, while simultaneously calling it a Blaine Amendment tainted by racial and anti-Catholic prejudice. *See id.* at 66:1–68:20. Dr. Glenn cannot give legal opinions—or judgments—under the cloak of an expert designation. *See, e.g.*, *Brown v. Dennis*, No. 3:15-3334-JMC-PJG, 2016 WL 4618892, at *2 (D.S.C. Sept. 6, 2016) ("Courts have frequently found such expert reports or testimony opining as to the law governing the case or containing legal conclusions to be inadmissible under Rule 702 and controlling case law."). That is especially true where, as here, Dr. Glenn has no legal training.

The Court should thus prevent Dr. Glenn from attempting to invade its province. Such testimony is both outside the confines of his report, ECF No. 73-2, and beyond his ken. *See* Fed. R. Civ. P. 26(e) & 37(c)(1); Fed. R. Evid. 701 & 702.

### Conclusion

Defendants respectfully request that the Court enter an Order excluding Dr. Glenn's report, opinions, and testimony from the record in this matter.

Respectfully submitted,

| | |
|---|---|
| Thomas A. Limehouse, Jr. (Fed. Bar No. 12148)<br>*Chief Legal Counsel*<br>Wm. Grayson Lambert (Fed. Bar. No. 11761)<br>*Senior Legal Counsel*<br>OFFICE OF THE GOVERNOR<br>South Carolina State House<br>1100 Gervais Street<br>Columbia, South Carolina 29201<br>(803) 734-2100<br>tlimehouse@governor.sc.gov<br>glambert@governor.sc.gov | Christopher E. Mills (Fed. Bar No. 13432)<br>SPERO LAW LLC<br>1050 Johnnie Dodds Blvd. #83<br>Mt. Pleasant, South Carolina 29465<br>(843) 606-0640<br>cmills@spero.law<br><br>/s/Vordman Carlisle Traywick, III<br>Vordman Carlisle Traywick, III<br>(Fed. Bar No. 12483)<br>ROBINSON GRAY STEPP & LAFFITTE, LLC<br>1310 Gadsden Street<br>Post Office Box 11449<br>Columbia, South Carolina 29211<br>(803) 231-7810<br>ltraywick@robinsongray.com |

*Counsel for Defendant Henry McMaster,*
*in his official capacity as Governor of the State of South Carolina*

/s/Eugene H. Matthews
Eugene H. Matthews (Fed. Bar No. 7141)
RICHARDSON PLOWDEN & ROBINSON, P.A.
Post Office Drawer 7788
Columbia, South Carolina 29202
(803) 771-4400
gmatthews@richardsonplowden.com

*Counsel for Defendants Marcia Adams, in her official capacity,*
*and Brian Gaines, in his official capacity*

/s/J. Emory Smith, Jr.
J. Emory Smith, Jr. (Fed. Bar No. 3908)
*Deputy Solicitor General*
OFFICE OF THE ATTORNEY GENERAL
Post Office Box 11549
Columbia, South Carolina 29211
(803) 734-3680
esmith@scag.gov

*Counsel for Intervenor–Defendant State of South Carolina*

September 29, 2021
Columbia, South Carolina