**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
(Charleston Division)**

| | |
|---|---|
| BISHOP OF CHARLESTON, et al., | Case No. 2:21-cv-1093-BHH |
| Plaintiffs, | |
| v. | |
| MARCIA ADAMS, et al., | **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY** |
| Defendants. | |

Plaintiffs submit this Opposition to Defendants' Joint Daubert Motion In Limine to Exclude Plaintiffs' Purported Expert Dr. Charles Glenn, ECF No. 75. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Dr. Glenn is an eminent authority on the subject of his testimony, and this Court should allow his submission to be considered as part of its adjudication of this case. His explication of the history of South Carolina's Blaine amendment is relevant to this Court's consideration of the contemporary application of that amendment, his methods are reliable, and Defendants' have raised no serious questions about his conclusions. Finally, Dr. Glenn never purported to make any legal judgments as to his findings, properly limiting himself to his role as historian.

### Standard of Review

"Expert testimony is permitted by a witness 'qualified as an expert by knowledge, skill, experience, training, or education,' so long as: (a) the expert's 'specialized knowledge will help the trier of fact to understand the evidence' or determine a fact at issue; '(b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.'" *United States v. Jennings*, No. 20-4432, 2021 U.S. App. LEXIS 19669, at *3 (4th Cir. July 1, 2021) (quoting Fed. R. Evid. 702).

"[T]he trial court's role as a gatekeeper is not intended to serve as a replacement for the adversary system, and consequently, the rejection of expert testimony is the exception rather than the rule." *Lipitor (Atorvastatin Calcium) Mktg. v. Pfizer, Inc.*, 892 F.3d 624, 631 (4th Cir. 2018) (quoting *United States v. Stanley*, 533 F. App'x 325, 327 (4th Cir. 2013)). "[A]t bottom, the court's evaluation is always a flexible one, and the court's conclusions necessarily amount to an exercise of broad discretion guided by the overarching criteria of relevance and reliability." *Oglesby v. GMC*, 190 F.3d 244, 250 (4th Cir. 1999)

## Argument

### I.      Dr. Glenn Is Eminently Qualified To Testify As To The History Of Education Discrimination, And The Role South Carolina Played In That History.

Defendant's objection to Dr. Glenn boils down to a single irrelevant point: that he is not a historian whose expertise is the history of South Carolina in general. *See* Motion at 5-6. But Dr. Glenn is not testifying about the Battle of Fort Sumter, or the legacy of John Rutledge, or the development of Myrtle Beach as a popular tourist destination. Dr. Glenn's testimony is focused directly on the area in which he is expert: the history of education discrimination, and the place of South Carolina in that history.

There should be no question of Dr. Glenn's qualifications, and even Defendants must admit they are formidable. *See* Motion at 6. He holds doctoral degrees in both Education Administration and Policy (Harvard) and Religion and Modern Culture (Boston University), fields which in combination render him an apt resource regarding the relationships between Blaine amendments

and anti-Catholic bigotry. He is Professor *emeritus* at Boston University, where he spent 25 years as Professor of Education Policy, including periods as Department Chair and Interim Dean. Prior to that, he spent two decades as a public servant in Massachusetts, working on desegregation efforts. He is an internationally renowned expert who has advised the governments of a number of different countries on education reform efforts.

Dr. Glenn's curriculum vitae demonstrates his long experience as an expert in education discrimination, including serving as an expert witness in school desegregation cases for the United State Department of Justice and the NAACP.  In addition to his government experience working to desegregate schools in Massachusetts, he has worked as a consultant and/or provided testimony in school reform efforts across the country, including California, Pennsylvania, Texas, Delaware, New Mexico, Florida, Alabama, Ohio, and Illinois. He previously provided expert testimony specifically on the history of Blaine amendments for a challenge to school vouchers under the Colorado Blaine amendment in *LaRue v. Douglas County*. S*ee generally Taxpayers for Pub. Educ. v. Douglas Cty. Sch. Dist.,* 356 P.3d 833 (Colo. App. 2013), *vacated as moot* 2018 Colo. LEXIS 195 (Jan. 25, 2018).  His work on the history of Blaine amendments was cited twice by Justice Alito's concurring opinion examining said history. *Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246, 2269 (2020); *Id.* at 2272.

Defendants cannot question these credentials, so instead they focus on the point that Dr. Glenn's expertise is not specifically the history of South Carolina. But Dr. Glenn does not claim to be an expert in the general history of South Carolina, and his expert report does not testify to it. He is an expert in the history of education discrimination, and his report lays out that history, including South Carolina's role in that history. (*See, e.g.*, Expert Report at ¶¶ 8-9, 14, 27-28, 31, 35-36, 64, 67, 68, 73, 75). This work is drawn from his own prior research, as he has written two

volumes of specific interest to his case: *African American/Afro-Canadian Schooling: From the Colonial Period to the Present* (Palgrave Macmillan 2011) and *The American Model of State and School: An Historical Inquiry* (Continuum 2012).[1] Defendants' argument, at bottom, is that he is not qualified to testify to things he has not testified to—information about South Carolina's history that is outside the scope of his research.

What is more, if the experiences of other states are not relevant to the historical basis for this case, then the Court should exclude not only Dr. Glenn but also the amicus briefs of Americans United, et al., and Public Funds Public Schools, et al., which extensively document the experiences of other states' no-aid provisions and whites-only academics. *See* ECF 78 and 80. Yet the State Defendants did not object to the filing of these amicus briefs. They cannot usher in the experiences of other states they find helpful while objecting to national or regional context that is not helpful to their case.

Defendants go on to complain that Dr. Glenn's expertise is invalid because he did not personally discover it all by his own "field work." Motion at 6. But experts are not required to personally discover every piece of information to which they testify. Instead, "Rule 702 grants experts 'wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation.'" *Sardis v. Overhead Door Corp.*, No. 20-1411, 2021 U.S. App. LEXIS 24960, at *23 (4th Cir. Aug. 20, 2021) (quoting *Daubert*, 509 U.S. at 592). Defendants' citation to *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 614–15 (7th Cir. 2002) is not to the contrary: by Defendants own description, it only applies "if the soundness of that underlying work is at

---

[1] Contrary to Defendants' protestations, ECF at 75 at 10, n.3, Dr. Glenn's sources for his scholarly publications are easily accessed. As Dr. Glenn explained in his report: "I will draw primarily from my books *African American/Afro-Canadian Schooling: From the Colonial Period to the Present* and *The American Model of State and School: An Historical Inquiry*. Full references for all the sources cited are found in one or the other of these volumes." Glenn Report at ¶ 7.

issue." Motion at 5. Nowhere in their Motion do Defendants in fact question the soundness of Dr. Glenn's history. They only question its relevance to South Carolina's enactment of Section 4. Indeed, "this type of evidence, synthesizing voluminous historical texts, is precisely the type of expertise that courts acknowledge historians possess." *Von Rosenberg v. Lawrence*, 413 F. Supp. 3d 437, 450 (D.S.C. 2019) (citing, *inter alia*, *Marvel Characters, Inc. v. Kirby,* 726 F.3d 119, 135-36 (2d Cir. 2013) ("A historian could, for example... helpfully synthesize dense or voluminous historical texts...")).

This Court should therefore find that Dr. Glenn is qualified to testify in this case.

## II.    Dr. Glenn's testimony is directly relevant to the factual questions at issue in this case.

Defendants next question the relevance and reliability of Dr. Glenn's testimony. "Relevant evidence, of course, is evidence that helps 'the trier of fact to understand the evidence or to determine a fact in issue.'" *Nease v. Ford Motor Co*., 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert*, 509 U.S. at 591). There should be no question that the historical evidence Dr. Glenn provides will be useful to this court's consideration of the case, as there is "no doubt that a historian's 'specialized knowledge' could potentially aid a trier of fact in some cases…[for instance] such a witness might offer background knowledge or context that illuminates or places in perspective past events." *Marvel Characters*, 726 F.3d at 135.

Historical evidence is useful for a variety of purposes. For instance:

Even when the words on the face of an historical document are comprehensible to the lay juror, a trained historian can contribute tremendously to the accuracy and completeness of the juror's understanding by situating the document in its historical context---a context with social, economic, technological, linguistic, and medical dimensions, to name but a few. Historians can also provide a meta-understanding of the historical record itself: its completeness, the biases built into it, and the degree of certainty with which facts may be asserted or broader trends identified upon its basis. Finally, a historian's synthesis of various source materials that

enables the jury to perceive patterns and trends can also be 'helpful' within the meaning of Rule 702.

*Burton v. Am. Cyanamid*, No. 07-CV-0303, 2018 U.S. Dist. LEXIS 139727, at *18 (E.D. Wis. Aug. 16, 2018).

Defendants' relevance argument focuses on the fact that Dr. Glenn's testimony does not include the period around 1972, when South Carolina ratified the current version of its Blaine amendment. Motion at 8. The contention is that any historical inquiry outside that period, such as to the context of South Carolina's adoption of the Blaine amendment in 1895, is irrelevant to this case.

First, again, if the Court should not consider anything from 1895, but focus exclusively on 1972, then the Court should exclude the amicus briefs of Americans United, et al., and Orangeburg County School District/NAACP, both of which focus primarily on explaining the historical background of the 1895 Tillmanite constitution. *See* ECF 78 and 79. But the Defendants did not object to these briefs; again, the same rule of relevance must apply.

More substantively, in just the past few years the Supreme Court has confronted exactly this situation—an ostensibly good-faith reenactment in the 1970s of a provision originally adopted for a discriminatory purpose in the late nineteenth century—and demonstrated exactly the opposite: that the taint of the original enactment is relevant when analyzing the current text. *See* ECF. No. 73-1, Plaintiffs' Motion for Summary Judgment, at 8-9.

First in *Ramos v. Louisiana*, 140 S. Ct. 1390, 1394 (2020), the Court struck down Louisiana's nonunanimous jury verdicts, with the majority explaining at length that the provision was originally adopted in 1898 at a convention whose "avowed purpose" was to "establish the supremacy of the white race." (internal quotation marks omitted). As in this case, a constitutional convention in 1974 had readopted a version of the same rule. *Id.* at 1426 (Alito, J., dissenting).

Justice Sotomayor elaborated in her concurrence as to why it was proper for the majority to consider this history: "the history is worthy of this Court's attention" "not simply because that legacy existed in the first place . . . but also because the States' legislatures never truly grappled with the laws' sordid history in reenacting them." *Id.* at 1410 (Sotomayor, J. concurring) (citing *United States v. Fordice*, 505 U. S. 717, 729 (1992)). Justice Kavanagh likewise explained at length in his concurrence why "the Jim Crow origins and racially discriminatory effects (and the perception thereof) of non-unanimous juries in Louisiana and Oregon should matter and should count heavily . . ." *Id.* at 1418 (Kavanagh, J., concurring). Later that same term, the court grappled with a Blaine amendment much like the one in this case: adopted by Montana in 1889, the amendment at issue in *Espinoza v. Montana Department of Revenue* was readopted by the state in 1972. Justice Alito explained that, while he had dissented in the prior case, *Ramos'* holding rendered the bigoted history of Blaine amendments relevant to their constitutionality, even where there was a later enactment in the 1970s. *Espinoza v. Mont. Dep't of Revenue,* 140 S. Ct. 2246, 2268 (2020) (Alito, J., concurring).

And so too in this case. Plaintiffs explain at length in their Motion for Summary Judgment the ways in which South Carolina's current provision is traceable to the Blaine amendment adopted in 1895. *See* ECF. No. 73-1 at 20-23. This Court can decide for itself whether that traceability is sufficient to carry the day. At this stage, the question for the court is whether Dr. Glenn's explanation of that history is *relevant* to the analysis. Plaintiffs submit that it is relevant, and there is no reason not to allow such historical context into evidence.

Dr. Glenn's testimony is likewise reliable and grounded in well-established techniques for historical research. "By reviewing historical documents and applying his experience, Dr. [Glenn] used the common tools of a historian." *Von Rosenberg*, 413 F. Supp. 3d at 451. Defendants never

point to any particular error they've identified in Dr. Glenn's research, instead returning to the theme that his expertise is not specific to South Carolina. They again argue that there's some failing in his lack of field work, but again, "this type of evidence, synthesizing voluminous historical texts, is precisely the type of expertise that courts acknowledge historians possess." *Id.* at 450.

Defendants' next attempt to invent a supposed inconsistency between Dr. Glenn's testimony and that of Plaintiffs' other expert, Dr. Graham. Motion at 11. They quote the portion of Dr. Graham's report that states that the Catholic population in South Carolina (based on 1908 statistics) was small enough that the dominant political cleavage was between Black and White. ECF No. 73-3, at 30. But Dr. Graham's report is in full agreement with Dr. Glenn on the relevant point: the Blaine amendment "became a tool in South Carolina during the revision of the state's 1895 Constitution to exclude religious schools founded to educate African-Americans." Graham Report, ECF No. 73-3 at 28; *compare* Glenn Report, ECF. No. 73-2 at ¶ 67 (the "South Carolina Constitution of 1895 . . . block[ed] public funding for the faith-based schools that had done so much to promote literacy among Black South Carolinians"). This concurrence among the experts likewise answers the charge in Defendants' next paragraph, Motion at 11, that Dr. Glenn's testimony is somehow inconsistent because he stated in his deposition that African Americans were mostly educated in non-Catholic schools. As both experts agree, the 1895 provision targeted not just Catholics, but also Protestant schools that had dared to educate African American children. Plaintiffs have consistently argued that both malicious motivations are relevant to this Court's consideration of this case.

This Court should therefore find that Dr. Glenn's testimony is relevant and reliable. His "opinions are relevant bricks in the evidentiary edifice Plaintiffs intend to construct." *In re Nat'l Prescription Opiate Litig.*, No. MDL 2804, 2019 U.S. Dist. LEXIS 144587, at *72 (N.D. Ohio

Aug. 26, 2019). Plaintiffs do not need to prove their whole case with Dr. Glenn's report alone. His report does important work showing the Blaine movement nationally and in the South during the Reconstruction era; this "broader national context…, including general trends,… will illuminate other evidence they will present." *Id.* at *70 (describing then adopting plaintiffs' arguments). One of the helpful functions of an expert witness is to place specific facts in a "broader context." *United States v. Archuleta*, 737 F.3d 1287, 1296 (10th Cir. 2013). This is what Dr. Glenn has done—he has situated South Carolina within the broader context of the South and nation in regards to the Blaine movement. This is clearly relevant to the overall case the Plaintiffs are building. After all, the first factor of the *Arlington Heights* test is the historical backdrop prior to a legislative enactment, and the Fourth Circuit specifically admonished the district court judge in *N.C. State Conference of the NAACP v. McCrory* for failing to fully consider the historical background. 831 F.3d 204, 223 (4th Cir. 2016). This Court should not make the same mistake.

### III.    Dr. Glenn's testimony is directed towards the facts within his expert knowledge and did not purport to answer questions of law.

Defendants' final argument is that Dr. Glenn's testimony somehow constituted conclusions of law. Motion at 12. But the passages Defendants cite demonstrate that Dr. Glenn did no such thing, much the opposite: he expressly declined to opine on legal questions, instead rigorously limiting his testimony to the history that is within his expertise.

When asked under oath whether Blaine amendments "generally were adopted by the states based on motivations of racial and religious animus," Dr. Glenn first began by "mak[ing] a distinction": he expressly said he "[didn't] have an opinion about [whether Blaine amendments] conflict with the U.S. Constitution. Because, in [his] view, it's up to the Supreme Court to decide that." Motion Ex. A., Glenn. Dep. Tr. at 66:11—20. He went on to explain that, "as a historian," he was convinced that the motivation for the Blaine amendments across the country was

"overwhelmingly" religious and racial bigotry. *Id.* at 66:20-25. At a later point in the deposition, he was asked whether the language of article XI, section 4, could fairly be referred to as a "Blaine amendment", and he answered "Absolutely"—that indeed section 4 looked "like similar provisions in a number of other states." *Id.* at 68:17-20. When pressed on the matter, he simply explained that he had reviewed many Blaine amendments around the country, and therefore he could form a judgment that the language of section 4 was similar to those other Blaine amendments.

Dr. Glenn's expertise includes the history of Blaine Amendments. He therefore offered his expert opinion as to whether the language of section 4 is comparable to other Blaine amendments. And it is perfectly appropriate for him to do so. Again, "Rule 702 grants experts 'wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation.'" *Sardis*, 2021 U.S. App. LEXIS 24960, at *23 (quoting *Daubert*, 509 U.S. at 592). At no point did he offer his view of the legal implications of this similarity—indeed, he expressly declined to opine as to any such thing at multiple points in his deposition.

Defendants final point is that this testimony is beyond the scope of Dr. Glenn's expert report. Motion at 12. It is true that the text of section 4 is not the subject of Dr. Glenn's report. But it was not Dr. Glenn, or Plaintiffs' counsel, that introduced that text—it was Defendants' counsel, who asked Dr. Glenn to read section 4, and for Dr. Glenn to opine on it, which he therefore did (except that he expressly declined Defense Counsel's invitation to interpret South Carolina law). Glenn. Dep. Tr. at 59:8-60:12. "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. Counsel is not entitled to raise an issue themselves, and then complain that the issue they raised was the subject of cross examination.

**Conclusion**

10

For the forgoing reasons, the Defendants' Motion to Exclude Dr. Glenn's testimony should be denied.

Respectfully submitted,

s/ Richard S. Dukes, Jr _____
Richard S. Dukes, Jr., (Federal ID No. 7340)
TURNER PADGET GRAHAM LANEY, PA
40 Calhoun Street, Suite 200
Charleston, South Carolina 29401
Phone: (843) 576-2800
Email: RDukes@turnerpadget.com

Daniel R. Suhr (Admitted Pro Hac Vice)
Liberty Justice Center
141 W. Jackson St.
Suite 1065
Ph.: 312-637-2280
dsuhr@libertyjusticecenter.org
*Counsel for Plaintiffs*

October 12, 2021