IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| BISHOP OF CHARLESTON, a Corporation Sole, d/b/a The Roman Catholic Diocese of Charleston, and SOUTH CAROLINA INDEPENDENT COLLEGES AND UNIVERSITIES, INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> MARCIA ADAMS, in her official capacity as the Executive Director of the South Carolina Department of Administration; BRIAN GAINES, in his official capacity as budget director for the South Carolina Department of Administration; and HENRY MCMASTER, in his official capacity as Governor of the State of South Carolina, <br><br> *Defendants*. <br> *and* <br><br> THE STATE OF SOUTH CAROLINA, <br><br> *Intervenor–Defendant*. | Civil Action No.: 2:21-cv-1093-BHH <br><br><br> **DEFENDANTS' REPLY IN SUPPORT OF JOINT *DAUBERT* MOTION IN LIMINE TO EXCLUDE PLAINTIFFS' PURPORTED EXPERT DR. CHARLES GLENN** |

Pursuant to Local Civil Rule 7.07 (D.S.C.), Defendants Marcia Adams, in her official capacity as the Executive Director of the South Carolina Department of Administration ("Director Adams"); Brian Gaines, in his official capacity as budget director for the South Carolina Department of Administration ("Gaines"); Henry McMaster, in his official capacity as Governor of the State of South Carolina ("Governor McMaster"); together with Intervenor–Defendant State of South Carolina ("the State") (collectively, "Defendants"), submit this Reply in Support of their Motion in Limine to Exclude the report, opinions, and testimony of Plaintiffs' purported expert,

Dr. Charles Glenn ("Joint *Daubert*[1] Motion"). For the reasons that follow, as well as those set forth in Defendants' Joint *Daubert* Motion, the Court should exclude Dr. Glenn.

## INTRODUCTION

Plaintiffs do not contend Dr. Glenn is qualified to give expert testimony on South Carolina history, and Dr. Glenn clarified he was not. Nor do Plaintiffs address Dr. Glenn's inability to offer opinions on the timeframe surrounding the West Committee that gave South Carolinians what their other expert called a "new Constitution." ECF No. 76-1, at 26.

Instead, Plaintiffs double down on Dr. Glenn's report, arguing his out-of-state account of national events provides "broader context" for what happened in South Carolina. ECF No. 91, at 9. But Plaintiffs fail to appreciate that Dr. Glenn even said he could not connect South Carolina with what happened in other States around the country. Defendants, of course, agree. So does Plaintiffs' other expert. Yet that is precisely how Plaintiffs are attempting to contort Dr. Glenn's testimony to build a flimsy case of alleged discrimination. The Court should decline the invitation to hop on this merry-go-round of circular reasoning to allow Dr. Glenn to offer his largely irrelevant and unreliable opinions about a State he has never visited.

Even when putting aside the self-defeating nature of Plaintiffs' proffer of Dr. Glenn, the Court can quickly dispense with Plaintiffs' arguments for four reasons. *First*, Defendants are not challenging Dr. Glenn's credentials. Rather, they are saying Dr. Glenn admitted he is not qualified to opine on South Carolina history, and the Court should take him at his word. *Second*, Plaintiffs' fanciful effort to equate unsolicited amicus briefs (several of which make arguments that are incorrect) with expert opinions is both curious and unavailing. *Third*, because even Dr. Glenn conceded he could not attribute history from other States to South Carolina, his testimony is

---

[1] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

irrelevant and unreliable for the purpose for which it is being offered.  *Fourth*, despite his clever turn of phrase, Dr. Glenn is not qualified to offer legal conclusions or "judgments" under the guise of expert testimony—whether that be in the form of calling the provision a "Blaine Amendment" or outright claiming it was motivated by racial and religious bigotry—when he is not trained in the law, he cannot offer opinions on questions reserved for the Court, and he knows nothing about the West Committee that adopted article XI, section 4 of the South Carolina Constitution.

The Court should therefore exclude Dr. Glenn's report, opinions, and testimony under Rule 702 of the Federal Rules of Evidence and *Daubert*.

### ARGUMENT

**I.     Dr. Glenn is not qualified.**

Plaintiffs now argue, for the first time, that Dr. Glenn is beyond reproach because he is an expert in "education discrimination," and he is being offered to discuss South Carolina's role in the history of education discrimination.  ECF No. 91, at 2.

For starters, that's news to Defendants.  Neither Plaintiffs' designation nor Dr. Glenn's report indicated his field of expertise.[2]  *Cf.* Fed. R. Civ. P. 26(a)(2) & (e).  During his deposition, Dr. Glenn claimed he is an expert in "this kind of litigation."  ECF No. 75-1, at 19.  But even if the Court accepts this evolving and after-the-fact designation, Dr. Glenn said over and over again that he is not qualified to opine on South Carolina history.  *E.g.*, *id.* at 50 & 14.  If Dr. Glenn is not an expert in South Carolina history, then how can he discuss its alleged role in education discrimination on a national level?  And how is that even relevant to the constitutional inquiry at hand?  Those are the questions Plaintiffs should have addressed.  Plaintiffs instead tried to

---

[2] Apparently, Dr. Glenn's area of alleged expertise is still a moving target.  Plaintiffs now contend Dr. Glenn is an "expert in the history of Blaine Amendments and African-American education." ECF No. 97, at 2.

3

recharacterize Defendants' argument by invoking trivia from our third grade South Carolina history class. *See* ECF No. 91, at 2. This is a red herring. No one was talking about Fort Sumter, John Rutledge, or Myrtle Beach. To the contrary, Dr. Glenn was repeatedly asked about the relevant groups and timeframe at issue in this case. He could not answer those basic questions.

Upon questioning, Dr. Glenn concisely conceded he had "no knowledge as to the activities of the West Committee who amended the provision of the South Carolina Constitution that is an issue in this case." ECF No. 75-1, at 53–54. And he has "neither knowledge nor opinion about the[] motivations" of the West Committee, the South Carolina General Assembly, "or any other body that would have had a role to play in the amendment of the provision in 1972." *Id.* at 54, 57. Dr. Glenn further acknowledged he could not testify as to what South Carolina leaders thought about Catholics. *Id.* at 38–39. When asked whether, "even within South Carolina, different attitudes and opinions and policies were prevalent" regarding education, Dr. Glenn candidly admitted, "I assume so, but I'm not a historian of South Carolina, so . . . you'll have to ask that question elsewhere." *Id.* at 36.

The vast majority of Dr. Glenn's report and testimony focused on events, attitudes, and policies in other States before 1956. But that history has no bearing on why the West Committee proposed and why the people of South Carolina adopted the no-aid provision in 1972, all of which Plaintiffs argue should be the central focus of the Court's constitutional inquiry. ECF No. 73-1, at 30. Put simply, Dr. Glenn "clearly has no relevant qualifications" to assist the Court. *Templeton v. Bishop of Charleston*, No. 2:18-cv-2003-DCN, 2021 WL 3419442, at *3 (D.S.C. Aug. 5, 2021). Although he purports to be a scholar on "this type of litigation"—whatever that means—that does not give him license to opine on a subject about which he knows nothing. *See* 29 Charles A. Wright. et al., *Federal Practice & Procedure* § 6265 at 255 & nn.34–35 (1977) ("Even where a

4

witness has special knowledge or experience, qualification to testify as an expert also requires that the area of the witness's competence matches the subject matter of the witness's testimony.").

Because Dr. Glenn admittedly lacks the requisite qualifications to offer any relevant testimony in this case, the Court should exclude his report, opinions, and testimony.

**II.     Defendants are not relying upon incorrect arguments from unsolicited amicus briefs.**

Next, Plaintiffs curiously argue Defendants "cannot usher in the experiences of other states they find helpful while objecting to national or regional context that is not helpful to their case." ECF No. 92, at 4.  But Defendants' position has never wavered: what happened in other States is irrelevant for purposes of Plaintiffs' claims.[3]  Further, in manufacturing this argument, Plaintiffs (1) incorrectly assume that Defendants agree with the unsolicited amicus briefs filed in this case and (2) erroneously conflate the standard for expert testimony with that of allowing a nonparty to voice its opinion.

Defendants, of course, did not solicit the amicus briefs filed by Orangeburg County School District and the South Carolina State Conference of the NAACP, ECF No. 79, or Americans United for Separation of Church and State, Global Justice Institute, and National Council of Jewish Women, ECF No. 80.  Nor did Defendants solicit an amicus brief from Public Funds Public Schools, Southern Education Foundation, and Advancement Project National Office.  ECF No. 78. Indeed, Defendants successfully opposed the first group's attempt to intervene in the case, and this Court's order denying intervention is pending on appeal.  As to the second group, the Governor did not consent to their motion for leave to file an amicus brief.  Turning to the final group, which

---

[3] And the Court correctly observed from the outset that Plaintiffs cannot draw a straight line from the Tillman era to the West Committee.  ECF No. 34, at 10.  Dr. Glenn's background, testimony, and candid concessions make clear that he does not possess the relevant ruler to help Plaintiffs draw that line.

5

speciously claims that anyone who supports school choice is a racist, *see* ECF No. 78-1, at 3–13, Defendants were not even aware they would ask to make their opinions known because counsel did not consult with the undersigned as required by Local Civil Rule 7.02 (D.S.C.) prior to seeking leave to file an amicus brief.

Plaintiffs' effort to link Defendants to three unsolicited amicus briefs filed by outside groups is thus unavailing.  Although Defendants did not oppose some of those groups being able to ask the Court for the opportunity to voice their opinions, that is not tantamount to an endorsement of their arguments or opinions.  Far from it.  In fact, several amici are wrong.  Like Plaintiffs, they incorrectly try to attribute events and attitudes from different States during different times to South Carolina.  That is neither a fair nor a logical leap, and it certainly does not connect or draw a line between Tillman and the West Committee.  As Plaintiffs concede, the Court's focus should be on the adoption of what now appears as article XI, section 4, as originally proposed by the West Committee and ultimately ratified by the people of South Carolina.[4]  *See* ECF No. 73-1, at 30.  The rest is just background noise.

More fundamentally, Plaintiffs' argument is untenable because they attempt to equate expert testimony with a nonparty's arguments in an amicus brief.  Such elevated treatment is unwarranted.  "An 'amicus' benefits the court by assisting the court in cases of general public interest by making suggestions to the court, by providing supplementary assistance to existing counsel, and by insuring a complete and plenary presentation of difficult issues so that the court may reach a proper decision." *S.C. Elec. & Gas Co. v. Whitfield*, No. 3:18-cv-01795-JMC, 2018 WL 3470660, at *4 (D.S.C. July 18, 2018).  The only limitation is that the Court "may not consider

---

[4] Dr. Blease Graham, Plaintiffs' other expert, testified the West Committee was not motivated by racial or religious animus.  ECF No. 76-1, at 27–28, 32.  To date, Plaintiffs have yet to confront this critical concession in a single filing with the Court.  Ignoring it will not make it go away.

legal issues or arguments not raised by the parties." *Tafas v. Dudas*, 511 F. Supp. 2d 652, 666 (E.D. Va. 2007). But other than that, with the Court's discretionary indulgence, amici can pretty much say whatever they want. After all, their briefs "are not evidence in the case."[5] *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 434 n.16 (1984).

Expert testimony, on the other hand, faces more rigorous review. *See Nucor Corp. v. Bell*, No. 2:06-cv-02972-DCN, 2008 WL 4442571, at *4 (D.S.C. Jan. 11, 2008) ("The Supreme Court has advised district courts to require more than the mere '*ipse dixit*' of the expert witness."). Among other things, the Court must ensure the "expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert*, 509 U.S. at 597); *see also* Fed. R. Evid. 702 (setting requirements for expert testimony). And the Court is required "to exclude 'subjective belief or unsupported speculation.'" *In re Bausch and Lomb Inc. Contact Lens Sol. Prods. Liab. Litig.*, No. 2:06-MN-77777-DCN, 2009 WL 2750462, at *9 (D.S.C. Aug. 26, 2009) (citing *Daubert*, 509 U.S. at 590). In other words, Plaintiffs are trying to compare apples to oranges.

### III.  Dr. Glenn's opinions are unreliable and irrelevant.

Although Plaintiffs bear the burden of proving their expert's opinions are reliable and relevant to the issues before the Court, their response on these points reads more like a regurgitation of their merits brief. Instead of confronting Dr. Glenn's concessions or grappling with the conclusory nature of his out-of-state assertions, Plaintiffs simply claim Defendants "raise[] no serious question about his conclusions." ECF No. 91, at 1. But that misses the point.

---

[5] For that reason, contrary to Plaintiffs' argument, the Court need not "exclude" the amicus briefs with which the parties disagree. ECF No. 91, at 6. It can simply ignore them.

The Court's "focus 'must be solely on principles and methodology, not on the conclusions that they generate.'" *Wickersham v. Ford Motor Co.*, No. 9:13-cv-1192-DCN, 2016 WL 5349093, at *2 (D.S.C. Sept. 26, 2016) (citing *Daubert*, 509 U.S. at 591). To be sure, "synthesizing voluminous historical texts[] is precisely the type of expertise that courts acknowledge historians possess." *von Rosenberg v. Lawrence*, 413 F. Supp. 3d 437, 450 (D.S.C. 2019). The expert's specialized knowledge and testimony, however, must be in the relevant field.[6] Here, that field is located in South Carolina.

Dr. Glenn discussed the State in only 13 out of 84 paragraphs in his report. *See* ECF No. 73-2, ¶¶ 8, 9, 14, 27, 28, 31, 36, 64, 67, 69, 73, 75 & 83. The paragraphs centered on education of African-Americans from the decades leading up to the Revolutionary War to the post-Civil War Reconstruction era, the adoption of universal schooling at the 1868 South Carolina Constitutional Convention, the establishment of HBCUs in the 1860s and 1870s, thoughts on school integration in the late 1860s, an ipse dixit line drawn from the Ku Klux Klan in Oregon to South Carolina in the 1920s, a voting literacy requirement in the 1895 South Carolina Constitution, school segregation in South Carolina in the early decades of the 20th century, a selected quote from Ben Tillman, and a passing reference to Strom Thurmond. *See id.* The rest of the report focused on isolated events, people, policies, and attitudes in other States.

None of that is relevant to whether article XI, section 4—which covers every private school in the State and does not once mention race—violates the U.S. Constitution. *See Bausch*, 2009 WL 2750462, at *10 (stating an "expert's theory and method must have a relevant relationship with the facts at issue in the case" (citing *Daubert*, 509 U.S. at 591–93)). Nor is Dr. Glenn's

---

[6] Notably, while Defendants largely disagree with Dr. Graham's opinions, they are not contesting his suitability to offer expert testimony under *Daubert*. That is because he is an expert in South Carolina history.

skewed line from past to present and State to State reliable. These are all one-off anecdotal observations from someone who admittedly is not an expert in South Carolina history and has never even been to the State. *See Nucor Corp.*, 2008 WL 4442571, at *7 ("Courts have considered an expert's reliance on anecdotal evidence as part of the Daubert reliability inquiry, often pointing to the use of anecdotal evidence as a marker of unreliability."). And his only effort to contextualize the smattering of events, quotes, and conclusory assertions in his report is to say they were part of a national trend just because he says so. *See id.* at *4 (requiring "more than the mere '*ipse dixit*' of the expert witness").

What is more, Dr. Glenn did not once consider—as Professor James Underwood, an actual expert in South Carolina history, did—that the provision was a product of South Carolina's fiscal conservatism and efforts to respect the constitutionally required separation of Church and State. *See In re: Pella Corp. Architect & Designer Series Windows Mktg., Sales Practices & Prods. Liab. Litig.*, 214 F. Supp. 3d 478, 483 (D.S.C. 2016) ("A failure to consider potential alternative causes may render an expert's testimony inadmissible."). Instead, Dr. Glenn simply claimed, without any foundation rooted in South Carolina, that article XI, section 4 was a Blaine Amendment borne of religious and racial bigotry because other States had vaguely related provisions and Ben Tillman was a racist. That much does not follow.

As the Court already recognized, Plaintiffs cannot "draw a straight line" from Tillman to the present. ECF No. 34, at 10; *see also City of Mobile v. Bolden*, 446 U.S. 55, 74 (1980) ("Past discrimination cannot, in the manner of original sin, condemn governmental action that is not itself unlawful."). Nor can they draw a line from what happened in other States to South Carolina. And Plaintiffs make zero effort to show this is an accepted or reliable legal principle. *Cf. Holesapple v. Barrett*, 5 F. App'x 177, 179 (4th Cir. 2001) (requiring expert opinion evidence to be supported

9

"by something more than the 'it is so because I say it is so' of the expert"); *Fernandez v. Spar Tek Indus., Inc.*, No. 0:06-cv-3253-CMC, 2008 WL 2185395, at *6 (D.S.C. May 23, 2008) (stating "an opinion based on an inadequate or inaccurate factual foundation cannot be a reliable opinion, no matter how valid the principles and methods applied or how well-qualified the expert").

Plaintiffs admitted in their Motion for Summary Judgment that "this Court's focus in analyzing the history of the 1972 amendment should stay on the West Committee." ECF No. 73-1, at 30. Yet Dr. Glenn has no knowledge or opinions about the West Committee. Thus, even if the Court were able to move past the lack of applicable qualifications, Dr. Glenn's report, testimony, and opinions are unreliable and irrelevant to the issues before it.

**IV.     Dr. Glenn cannot offer legal opinions.**

Last, Dr. Glenn is not qualified to offer legal conclusions under the guise of expert testimony—whether that be in the form of calling the provision a "Blaine Amendment" or outright saying it was motivated by racial and religious bigotry—when he is not trained in the law and knows nothing about the West Committee that adopted article XI, section 4. Contrary to Plaintiffs' assertions, Defendants did not ring that bell first. Dr. Glenn testified he was being offered as an expert in "this kind of litigation" dealing "with whether provisions of a State Constitution" are "a result of decisions made on the basis of [] discriminatory considerations, whether racial or religious." ECF No. 75-1, at 19. Thus, defense counsel was compelled to follow up on the text of article XI, section 4. *Id.* at 51–52. Plaintiffs, however, then took it a step further on cross-examination and had Dr. Glenn label the provision a Blaine Amendment motivated by racial and religious prejudice. *Id.* at 58–60.

Regardless of who started it, Dr. Glenn cannot give legal opinions—or judgments—under the cloak of an expert designation. *E.g.*, *Brown v. Dennis*, No. 3:15-3334-JMC-PJG, 2016 WL

10

4618892, at *2 (D.S.C. Sept. 6, 2016). He is not a lawyer, and he cannot testify on legal matters or the ultimate issues, which are reserved for the province of the Court.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Defendants' Joint Motion, the Court should exclude Dr. Glenn's report, opinions, and testimony from the record in this matter.

Respectfully submitted,

| | |
|---|---|
| Thomas A. Limehouse, Jr. (Fed. Bar No. 12148)<br>*Chief Legal Counsel*<br>Wm. Grayson Lambert (Fed. Bar No. 11761)<br>*Senior Legal Counsel*<br>OFFICE OF THE GOVERNOR<br>South Carolina State House<br>1100 Gervais Street<br>Columbia, South Carolina 29201<br>(803) 734-2100<br>tlimehouse@governor.sc.gov<br>glambert@governor.sc.gov | Christopher E. Mills (Fed. Bar No. 13432)<br>SPERO LAW LLC<br>557 East Bay Street #22251<br>Charleston, South Carolina 29413<br>(843) 606-0640<br>cmills@spero.law<br><br>/s/Vordman Carlisle Traywick, III<br>Vordman Carlisle Traywick, III<br>(Fed. Bar No. 12483)<br>ROBINSON GRAY STEPP & LAFFITTE, LLC<br>1310 Gadsden Street<br>Post Office Box 11449<br>Columbia, South Carolina 29211<br>(803) 231-7810<br>ltraywick@robinsongray.com |

*Counsel for Defendant Henry McMaster,*
*in his official capacity as Governor of the State of South Carolina*


/s/Eugene H. Matthews
Eugene H. Matthews (Fed. Bar No. 7141)
RICHARDSON PLOWDEN & ROBINSON, P.A.
Post Office Drawer 7788
Columbia, South Carolina 29202
(803) 771-4400
gmatthews@richardsonplowden.com

*Counsel for Defendants Marcia Adams, in her official capacity,*
*and Brian Gaines, in his official capacity*

/s/J. Emory Smith, Jr.
J. Emory Smith, Jr. (Fed. Bar No. 3908)
*Deputy Solicitor General*
OFFICE OF THE ATTORNEY GENERAL
Post Office Box 11549
Columbia, South Carolina 29211
(803) 734-3680
esmith@scag.gov

*Counsel for Intervenor–Defendant State of South Carolina*

October 22, 2021
Columbia, South Carolina